IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-03-00031-CR

 

Barney Dewaine Oldfield,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 54th District Court

McLennan County, Texas

Trial Court # 2002-817-C

 



MEMORANDUM 
Opinion



 

        A
jury convicted Barney Wayne Oldfield of four counts of aggravated assault and
sentenced him to life.  We affirm.

BACKGROUND

          Oldfield
was identified as the assailant of five stabbing victims and was charged with
five counts of aggravated assault.  Prior
to trial, the State waived the fifth count. 
At his jury trial, Oldfield was found guilty and sentenced to life in
prison and a $10,000 fine on each of the four counts.

          In
his appeal, Oldfield argues that the trial court erred by (1) failing to remove
a juror for disability; (2) denying him the effective assistance of counsel by
failing to disclose that a juror was disabled; (3) denying his motion for a new
trial because a juror was not a resident of McLennan county at the time of
trial; (4) denying his motion for a new trial because a juror withheld material
information during voir dire; (5) failing to appoint counsel to represent him
on an unadjudicated extraneous offense for which he was arrested prior to trial
and that was used against him in the punishment phase of his trial; (6) excluding
instructions on the lesser included offense of assault in the charge; and (7)
denying his request for a limiting instruction in the charge regarding his
tattoos.

VOIR
DIRE

Juror
Disability

          Oldfield
argues in his first issue that the trial court erred by failing to remove a
juror for disability.  After the jury was
empanelled, the trial court was informed that juror Virginia Mahan felt she
could not concentrate on the case because of the recent news that her brother
was near death.  The trial court informed
the attorneys of Mahan's concerns and told them that he wished to question
Mahan in his chambers on the record.

          The Court:  I would like to do it without everybody being
present, but it doesn't matter to me if
you want to be present.  That is fine.

 

          Oldfield's Attorney:  That's fine, Judge.

 

          Subsequently,
the trial court questioned Mahan in his chambers without either attorney
present.  During this conference, Mahan
expressed concern that she would not be able to concentrate on the case because
she would be "thinking about a law abiding citizen dying and one
committing a crime."  Yet, she also
said that she would perform her "civic and Godly duty to the best of [her]
ability."  The trial court
determined that Mahan could complete her role as a juror and upon returning to
the courtroom, expressed this opinion to the attorneys.

          Oldfield
contends that Mahan was disabled to serve on the jury because the strain of her
brother's terminal illness inhibited her from fully and fairly performing the
functions of a juror.  Oldfield points to
Mahan's testimony that she would think about "one committing a crime"
as evidence of her bias against him in that she had already concluded that he
was guilty.  Oldfield argues further that
had Mahan expressed these feelings in voir dire, he would have challenged her
for cause.

          The
determination of whether a juror is disabled is within the sole discretion of
the trial court; therefore, we review this issue under an abuse-of-discretion
standard.  Routier v. State, 112 S.W.3d 554, 588 (Tex. Crim. App. 2003).  A juror is disabled only when he is
physically, emotionally, or mentally impaired in some way that hinders his
ability to perform the duties of a juror.  Brooks
v. State, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999); Ricketts v. State, 89 S.W.3d 312, 318 (Tex. App.—Fort Worth 2002,
pet. ref'd).  The disabling condition may
result from physical illness, mental condition, or emotional state.  Reyes
v. State, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000); Ricketts 89 S.W.3d at 318. 
However, a juror's bias or prejudice for or against the defendant does
not render a juror disabled.  Reyes, 30 S.W.3d at 412.

          Mahan
testified that despite her ill news, she would do her duty to the best of her
ability, and the trial court agreed with that assessment.  We find that the trial court did not abuse
its discretion in allowing Mahan to continue as a juror.  Though Oldfield points to Mahan's potential
bias, that is not a condition that would render a juror disabled.  Reyes,
30 S.W.3d at 412.  Accordingly, we
overrule Oldfield's first issue.

          In
his second issue, Oldfield argues that the trial court denied him the effective
assistance of counsel when the trial court did not disclose Mahan's disability,
specifically her potential bias.  We have
already determined that there was no abuse of discretion in the trial court's
decision that Mahan was not disabled; therefore, there could be no error in
nondisclosure.  Furthermore, Oldfield's
counsel was given the opportunity to participate in the conference with Mahan,
yet refused.  Therefore, Oldfield cannot
now complain of his ignorance of Mahan's possible bias and has waived this
issue for appeal.  See Tex. R. App. P.
33.1.  We overrule Oldfield's second
issue.

Juror's
Residency Requirement

          Oldfield
argues in his third and fourth issues that the trial court erred in denying his
motion for new trial.  

          A
trial court's ruling denying a motion for new trial is reviewed under an
abuse-of-discretion standard and will not be reversed unless the trial court's
analysis is arbitrary or unreasonable.  Salazar v. State, 38 S.W.3d 141, 148
(Tex. Crim. App. 2001); Lewis v. State,
911 S.W.2d 1, 7 (Tex. Crim. App. 1995); Ford
v. State, 129 S.W.3d 541, 547 (Tex. App.—Dallas 2003, pet. ref'd).  The trial court is the sole judge of the
credibility of any testifying jurors.  Lewis, 911 S.W.2d at 7.  If there is conflicting evidence on an issue
of fact, then there is no abuse of discretion in overruling the motion for new
trial.  Id.; Ford,
129 S.W.3d at 547.

          Specifically,
in his third issue Oldfield argues the trial court erred in denying his motion
for new trial because a juror who was not a resident of McLennan County participated in the trial.  In
order to qualify as a juror, the potential juror must be a citizen of the state
and the county in which he is to serve.  Tex. Gov’t Code Ann. § 62.102(1) (Vernon Supp. 2004).

          Oldfield
alleged in his motion for new trial that after his conviction it was discovered
that juror Shawna Hutchison was not a resident of McLennan County and had not been a resident for at least six months prior to
trial.  Oldfield filed the affidavit of
Mitch Tyra, a private investigator, who interviewed Hutchison.  According to Tyra, Hutchison said her
residence was in Wortham, a city in Freestone County, and that she had been
living there for six or seven months.  Also,
Tyra interviewed Hutchison's stepfather, who confirmed that Hutchison was
living in Wortham.  Additionally,
Oldfield referred the trial court to Hutchison's subpoena to appear at the
hearing which was personally served upon Hutchison in Wortham.

          In
response, the State filed affidavits of both Hutchison and her mother stating
that Hutchison lived in McLennan county.

          The
trial court was presented with conflicting evidence.  As such, it did not abuse its discretion in
finding that Hutchison resided in McLennan County.  Lewis, 911 S.W.2d at 7.  Furthermore, even if Hutchison had not
resided in McLennan County, Oldfield has waived this issue on appeal.  The requirement that a juror be a county resident
is not an absolute requirement, and the failure to challenge the juror before
empanelling, as here, waives the issue.  See Mayo
v. State, 4 S.W.3d 9, 12 (Tex. Crim. App. 1999).  Accordingly, we overrule Oldfield's third
issue.




Juror
Misconduct

          In
his fourth issue, Oldfield argues that the trial court erred in denying his
motion for new trial because Hutchison withheld material information during
voir dire.  "The voir dire process
is designed to insure, to the fullest extent possible, that an intelligent,
alert, disinterested, impartial, and truthful jury will perform the duty
assigned to it."  Armstrong v. State, 897 S.W.2d 361, 363
(Tex. Crim. App. 1995).  "Where a
juror withholds material information in the voir dire process, the parties are
denied the opportunity to exercise their challenges, thus hampering their
selection of a disinterested and impartial jury."  Salazar
v. State, 562 S.W.2d 480, 482 (Tex. Crim. App. [Panel Op.] 1978).  The withheld information must be material, i.e., it must suggest a potential for
bias or prejudice.  See Decker v. State, 717 S.W.2d 903, 907 (Tex. Crim. App. 1983)
(op. on reh'g).

          However,
defense counsel has an obligation to exercise due diligence by asking questions
calculated to bring out a juror's potential for bias.  Gonzales
v. State, 3 S.W.3d 915, 917 (Tex. Crim. App. 1999).  The failure of a juror to disclose material
information is not considered to have been "withheld" unless defense
counsel asked such specific questions during voir dire.  Gonzales,
3 S.W.3d at 917; Armstrong, 897
S.W.2d at 364.

          Oldfield
argues that after his conviction it was discovered that juror Hutchison
witnessed an assault on Kenneth Parsons, a co-worker, who was stabbed several
times.  Oldfield was arrested in connection
with Parsons's assault.  Oldfield
admitted into evidence police offense reports for the assault that listed
Hutchison as a witness, Oldfield's involvement, and the involvement of another
suspect known to Hutchison.  Oldfield
contends that the trial court asked specific questions designed to elicit such
information, and Hutchison failed to respond to such questions.  The pertinent questions are reproduced below.

Is there anybody on this panel who they, or a
close personal friend or family member has ever been the victim of aggravated
assault where it was alleged that a knife was used or where that you believe a
knife was used?

 

Is there anybody on this panel that because I
have told you what the allegations are in the indictment that because there is
something in their personal life or that has happened to them or a close
personal family member or friend that could not sit and listen to the evidence
in this case and reach a fair verdict on guilt and a fair verdict, if you were
called to, for punishment?

 

          Hutchison
did not answer affirmatively to these questions.  However, in response, Hutchison stated in her
affidavit that she was truthful in not answering affirmatively because Parsons
was not a close personal friend and she truly felt that she could reach a fair
verdict.  She explained that Parsons was
just an acquaintance that she knew from work for a short period of time.  Furthermore, Parsons confirmed in his
affidavit that he was not a close personal friend of Hutchison.

          Once
again, the trial court was the arbiter of conflicting evidence, and we must
defer to its judgment.  Lewis, 911 S.W.2d at 7.  Furthermore, the questions asked of Hutchison
were not specific enough so that it can be said that Hutchison withheld the
information.  Though a fine line, courts
have consistently upheld it.  Barajas v. State, 93 S.W.3d 36, 41-42
(Tex. Crim. App. 2002) (holding "Can you be fair and impartial?" as
too imprecise); Armstrong, 897 S.W.2d
at 363-64; Brandon v. State, 599
S.W.2d 567, 578 (Tex. Crim. App. 1979); Ford,
129 S.W.3d at 547-49.  Therefore, we find
that the trial court did not abuse its discretion in denying Oldfield's motion
for new trial.  Accordingly, we overrule
Oldfield's fourth issue.




EXTRANEOUS
OFFENSES

          Oldfield
argues in his fifth issue that the trial court erred by failing to appoint
counsel to represent him on a sexual assault charge for which he had been arrested
prior to trial.  While Oldfield was on
bond awaiting trial for aggravated assault, he was arrested for sexual
assault.  Oldfield requested counsel, but
was not appointed counsel until after his aggravated assault trial.  During the punishment phase of his aggravated
assault trial, the State presented evidence of the unadjudicated sexual assault.

          Oldfield
argues that his counsel representing him in the assault trial was not
representing him on the sexual assault charge, and separate counsel should have
been appointed to defend Oldfield on the sexual assault offense evidence raised
in the punishment phase of the assault trial. 
Oldfield further argues that if counsel had been appointed, he would not
have received adequate preparation time. 
Oldfield cites no authority for his position.

          The
State is allowed to introduce evidence of unadjudicated bad acts or offenses in
the punishment phase of a trial.  Paredes v. State, 129 S.W.3d 530, 541
(Tex. Crim. App. 2004) (citing Cantu v.
State, 939 S.W.2d 627, 648 (Tex. Crim. App. 1997)).  Any error in the delay in appointing counsel
for the sexual assault charge would apply only to that specific charge, and not
to the offense at hand.  We fail to see
how the delay in appointing counsel for the sexual assault charge affects
Oldfield's rights in the adjudication of the aggravated assault offense.  As for the lack of preparation time, Oldfield
argues only that the appointed counsel would not have received the required ten
day preparation time.  Tex. Code Crim. Proc. art.
1.051(e).  He does not argue that his
counsel did not receive adequate notice that the State would use the sexual
assault offense in the punishment phase of his trial.  Therefore, we overrule Oldfield's fifth
issue.

THE
CHARGE

Instruction
on Lesser Included Offenses

          Oldfield
argues in his sixth issue that the trial court erred by failing to include
instructions on the lesser included offense of misdemeanor assault in the
charge.

          A
jury charge instruction on a lesser-included offense must be given only if (1)
the lesser-included offense is included within the proof necessary to establish
the offense charged;  and (2) some
evidence exists in the record to prove that if the defendant is guilty, he is
guilty only of the lesser offense.  Hampton v. State, 109 S.W.3d 437, 440
(Tex. Crim. App. 2003) (citing Rousseau
v. State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993)). 

          A
person commits the offense of misdemeanor assault if he intentionally,
knowingly, or recklessly causes bodily injury to another.  Tex. Pen.
Code Ann. § 22.01(a)(1) (Vernon Supp. 2004). 
A person commits the offense of aggravated assault if he commits misdemeanor
assault and either: (1) causes serious bodily injury to another, or (2) uses or
exhibits a deadly weapon during the commission of the assault.  Tex. Pen.
Code Ann. § 22.02(a) (Vernon Supp. 2004). 
Therefore, in the analysis of the second requirement, in order to be entitled
to an instruction on misdemeanor assault, there must have been some evidence
that the victims did not suffer serious bodily injury and that Oldfield did not use or exhibit a deadly weapon.

          A
"Deadly weapon" is:  "(A)
a firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury; or (B) anything that in the manner
of its use or intended use is capable of causing death or serious bodily
injury."  Tex. Pen. Code Ann. § 1.07(17) (Vernon Supp. 2004).

          Oldfield
admits to stabbing the victims with a knife, yet asserts that his intent was
only to protect himself.  Because there
is no evidence that during the incident a knife was not used, a reasonable jury
could not have found Oldfield guilty of only misdemeanor assault.  Hampton, 109 S.W.3d at 441; Ferrel v. State, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).  Therefore, Oldfield is not entitled to an
instruction on the lesser-included offense of misdemeanor assault.  Hampton,
109 S.W.3d at 441 (holding no instruction on misdemeanor assault because
"[t]he only affirmative evidence adduced at trial that was germane to the
issue of whether a knife was used during the course of the assault reflected
that a knife was used."); Ferrel,
55 S.W.3d at 591.  We overrule Oldfield's
sixth issue.

Limiting
Instruction Concerning Tattoos

          In
his seventh issue, Oldfield argues that the trial court erred by denying his
request for a limiting instruction concerning his tattoos.  The State cross examined Oldfield regarding his
white power and Adolph Hitler tattoos. 
Oldfield objected but did not request a limiting instruction at that
time.  Instead, he first requested a
limiting instruction in the charge.  

          Because
Oldfield did not request a limiting instruction at the time the evidence was
admitted, the trial court was not required to include a limiting instruction in
the charge.  See Tex. R. Evid.
404; Hammock v. State, 46 S.W.3d 889,
895 (Tex. Crim. App. 2001) (citing Rankin
v. State, 974 S.W.2d 707, 712 n.3 (Tex. Crim. App. 1996)).  Furthermore, we can find no authority, nor
does Oldfield refer to any, that suggests that evidence of tattoos should be
considered by a jury for only a limited purpose.  Therefore, we overrule Oldfield's seventh
issue.

CONCLUSION

          Having
overruled all of Oldfield's issues, we affirm the judgment of the trial court.

 

 

                                                                   FELIPE
REYNA

                                                                   Justice

 

Before Chief Justice Gray,

          Justice
Vance, and 

          Justice
Reyna

Affirmed

Opinion delivered and filed November 3, 2004

Do not publish

[CR25]